# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

KEITH LAMAR,

                                     :

        Petitioner,                     Case No. 1:04-cv-541

                                     :       District Judge Thomas M. Rose

        -vs-                          Chief Magistrate Judge Michael R. Merz

TODD ISHEE, Warden,

                                     :

        Respondent.

---

### REPORT AND RECOMMENDATIONS ON MOTION TO DISMISS

---

This case is before the Court on Respondent's Renewed Motion to Dismiss on Statute of Limitations Grounds (Doc. No. 57) which Petitioner opposes (Doc. No. 59). Respondent has filed a Reply (Doc. No. 61).

28 U.S.C. §2244 (d), adopted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such

-1-

State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The statute of limitations is an affirmative defense which is waived if not pleaded as required by Fed. R. Civ. P. 8(c).  *Scott v. Collins*, 286 F. 3d 923 (6th Cir. 2002).  However, Petitioner readily admits that Respondent has been pleading the statute of limitations from the outset.[1]

Petitioner also concedes that the statute began to run on December 2, 2002, when the United States Supreme Court denied certiorari to review his conviction on direct appeal (Memorandum, Doc. No. 59 at 13).  On December 1, 2003, the day before the statute would have run, Petitioner filed here his Notice of Intent to File a Habeas Corpus Petition (Doc. No. 1).  However, he did not file his Petition (Doc. No. 19) here until August 16, 2004.  Therefore, the Petition is untimely unless the statute is tolled under 28 U.S.C. §2244(d)(2) by the pendency of Mr. LaMar's Ohio App. R. 26(B) Application for Delayed Reopening or the statute is equitably tolled.[2]

_____

[1]"Since the time Petitioner LaMar filed his habeas corpus action, Respondent Warden has been trying to obtain dismissal on the basis of failing to meet the statute of limitations." (Memorandum in Opposition, Doc. No. 59 at 1.)

[2]Petitioner states that arguably filing the Notice of Intent satisfies the statute, (Memorandum at 14),  but  notes that the Sixth Circuit had said in *King v. Bell*, 378 F. 3d 550, 552 (2004), that it had not yet decided that question.  A suggestion to that effect was offered by

**Statutory Tolling**

Petitioner filed his Application for Delayed Reopening under Ohio App. 26(B) on November 19, 2003, when, as he and his present counsel well knew, there were only twelve days remaining in the AEDPA one-year statute of limitations period.  At that time, *Bronaugh v. Ohio*, 235 F.3d 280 (6th Cir. 2000), was the law in this circuit.  *Bronaugh* held that even an untimely application to reopen under  Ohio App. 26(B) would toll the statute of limitations during its pendency.  *Id*. at 286.

*Bronaugh* depended on *White v. Schotten,* 201 F. 3d 743 (6th Cir. 2000), which held that an application for reopening under Ohio R. App. 26(B) is to be treated as part of the direct review process, rather than as an application for post-conviction relief or other collateral review. *Id*. at 752-53. The doctrine of *White v. Schotten* risked completely gutting the statute of limitations because its logic would not have direct appeal end (and the limitations period start to run) until a 26(B) application was decided, even if such an application was ten years beyond the 90-day limit set in 26(B).  Apparently aware of that unacceptable result, the Sixth Circuit attempted to limit the damage with the holding in *Bronaugh*.

Respondent argues *Bronaugh* was poorly reasoned.  However, its authority does not depend on the quality of its logic, but on the position in the judicial hierarchy of the court that decided it.  "Unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts

---

Judge Kennedy in dissent in *Williams v. Coyle*, 167 F. 3d 1036, 1041 (6th Cir. 1999).  While the filing of a Notice of Intent confers jurisdiction sufficient to permit this Court to appoint counsel, *McFarland v. Scott*, 512 U.S. 849 (1994), such an interpretation would create an incentive for inappropriate delay of adjudication of the case on the merits and arguably interfere with the court's authority to set filing deadlines.  Thus this Court declines to adopt the suggestion.

may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1982).

Respondent cites *Hutto* in attempting to persuade this Court it must follow *Pace v. DiGuglielmo*, 125 S. Ct. 1807 (2005), which held that a postconviction petition rejected by the state courts as untimely is not "properly filed" within 28 U.S.C. §2244(d)(2). *Id.* at 1811-12Similarly, Respondent has called the Court's attention to *Lopez v. Wilson*, 426 F. 3d 339, 352 (6th Cir. 2005), which cut the underpinnings from *Bronaugh* by expressly overruling *White*. If Petitioner's Application for Delayed Reopening were still pending in the Ohio Supreme Court today, its pendency would no longer toll the statute of limitations because *Pace* and *Lopez* are now the law. But at the time Petitioner relied on it, *Bronaugh* was still good law and it remained good law until after Petitioner filed his Petition. Thus the Court concludes the statute was tolled under *Bronaugh* until the time the Petition was filed.

## Equitable Tolling

Petitioner asserts in the alternative that he is entitled to equitable tolling of the statute. Respondent takes the vehement (i.e., expressed by bold-face type) position that equitable tolling is never available under 28 U.S.C. §2244(d). However, the Sixth Circuit has expressly held to the contrary. *Dunlap v. United States*, 250 F. 3d 1001 (6th Cir. 2001)(The language and legislative history of the AEDPA establish that §2244(d) was intended as a limitations period, not a jurisdictional bar, and is therefore subject to equitable tolling.) In *Pace, supra,* the Supreme Court assumed that equitable tolling may be available under §2244(d), although it concluded that petitioner there was not entitled to it. 125 S. Ct. at 1815 fn. 8. Until the United States Supreme Court squarely

rules to the contrary, this Court is bound to follow *Dunlap*.

Applying *Dunlap*, however, Petitioner is not entitled to equitable tolling in this case.

In determining whether equitable tolling is appropriate, courts in the Sixth Circuit follow the test set out in *Andrews v. Orr*, 851 F.2d 146 (6th Cir.1988), in which the court "specifically identified five factors to consider when determining the appropriateness of equitably tolling a statute of limitations: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc*., 209 F.3d 552, 561 (6th Cir.2000)." *Dunlap, v. United States*, 250 F. 3d 1001, 1005 (6th Cir. 2001). This list of factors is not necessarily comprehensive, and not all factors are relevant in all cases. *Miller v. Collins*, 305 F. 3d 491, 495 (6th Cir. 2002). "Absence of prejudice is to be considered only after a factor that might justify tolling is identified." *Allen v. Yukins*, 366 F. 3d 396, 403 (6th Cir. 2004), *quoting Vroman v. Brigano*, 346 F. 3d 598, 605 (6th Cir. 2003). "[I]gnorance of the law alone is not sufficient to warrant equitable tolling." *Allen v. Yukins,* 366 F. 3d 396 (6th Cir. 2004), *quoting Rose v. Dole*, 945 F. 2d 1331, 1335 (6th Cir. 1991).

The burden is on the petitioner to demonstrate that he is entitled to equitable tolling. *Allen v. Yukins,* 366 F. 3d 396, 401 (6th Cir. 2004); *McClendon v. Sherman,* 329 F. 3d 490, 494 (6th Cir. 2003); *Griffin v. Rogers,* 308 F. 3d 647, 653 (6th Cir. 2002). Typically, equitable tolling applies only when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control. *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003), *citing Graham Humphreys v. Memphis Brooks Museum of Art, Inc*., 209 F.3d 552, 561 (6th Cir.2000). "Absent

-5-

compelling equitable considerations, a court should not extend limitations by even a single day." *Id.* at 561.

In *McClendon v. Sherman*, 329 F. 3d 490 (6th Cir. 2003), Judge Moore, the author of *Dunlap*, applied it to another habeas corpus case in which equitable tolling was claimed. There the petitioner claimed lack of notice of the filing deadline, but the court held he should have known of it from decisions the Sixth Circuit itself made. *McClendon*, 329 F. 3d at 495. If it is not unreasonable to hold a prisoner to knowledge of deadlines set by case law, it is certainly not unreasonable to expect the Defendant here would know of the one-year deadline from the statute itself. Judge Moore also found McClendon lacking in diligence, as she had with Dunlap. *Id.* In *Dunlap* there was only a two-month unexplained delay.

In this case, Petitioner specifically disclaims any lack of notice of the filing deadline. (Petitioner's Memorandum in *Pace v. DiGulielmo*, Doc. No. 49 at 18). This eliminates the need to analyze the first and second *Andrews-Dunlap* factors. Further, the State has suffered no prejudice by the delay. As Petitioner points out, if he had filed a mixed petition and sought to have it held in abeyance pending resolution of his 26(B) Application, the case would be in precisely the same status today as it is.

However, Petitioner's claim that he was diligent in pursuing his rights is not tenable. More than five years expired from the time judgment became final until he filed his 26(B) Application. Petitioner asserts "[u]pon discovering that an App. R. 26(B) application had not been filed, LaMar filed one in state court." (Petitioner's Memorandum in Pace v. DiGulielmo, Doc. No. 49 at 19.) A more accurate statement would be that when Petitioner's federal habeas corpus counsel discovered that an App. R. 26(B) application had not been filed, they filed one on his behalf. *Id*. at 4. Counsel

representing Mr. LaMar in post-conviction relief proceedings knew in April, 2000, that a 26(B) application had not been filed.  *Id.* at 3.  Presumably they advised their client of what they were doing when they applied to be appointed to file such an application and when they were turned down.  *Id.*  Mr. LaMar himself did nothing to file a 26(B) application *pro se* at any time between then and the filing on his behalf by habeas counsel three and one-half years later.

It will surely be objected that a capital defendant cannot be expected to file his own 26(B) application since, as present counsel point out, one must be specially certified by the Ohio Supreme Court to represent capital defendants on direct appeal and presumably it requires even more sophistication to draft cogent claims of ineffective assistance of appellate counsel.[3]  While the objection has logical appeal, it carries no legal weight.  The need for counsel to make such arguments presumably at least in part persuaded the Sixth Circuit to reach the decision it did in *White v. Schotten, supra,* that appointed counsel were required on 26(B) applications because they were part of the direct appeal process.  But that decision had virtually no impact on Ohio practice,[4] and has now been overruled by *Lopez v. Wilson, supra.  Lopez* notes that, because 26(B) practice is collateral review, there is no constitutional entitlement to appointed counsel.  In the absence of a state determination to expend more funds on such counsel, then, any criminal defendant will have to file his own 26(B) application.  Even if Mr. LaMar were thought to be sufficiently diligent in waiting on post-conviction counsel to file such an application, this will not excuse the three and one-

---

[3]By noting this objection, the Court does not mean to accept the argument that a criminal defendant, proceeding *pro se*, cannot file an adequate 26(B) application.  Within the week prior to this Decision, the Court decided two habeas corpus cases in which timely and cogent 26(B) applications had been filed by *pro se* defendants.

[4]Counsel report a number of cases in which counsel were appointed at the direction of the Ohio Supreme Court on 26(B) applications, but the Sixth Circuit noted in *Lopez v. Wilson, supra,* that virtually all the Ohio appellate courts were not following the case.

half years after they failed to do so when he filed nothing on his own behalf.

Nor can the Court accept counsel's argument that, if they had filed a mixed petition by December 2, 2003, they would have risked dismissal as happened in the district court in *Griffin v. Rogers*, 399 F. 3d 626 (6th Cir. 2005). In *Palmer v. Carlton*, 276 F. 3d 377 (6th Cir. 2002), long before December 2, 2003, the Sixth Circuit adopted the "stay and abey" procedure later blessed by the Supreme Court in *Rhines v. Weber*, 541 U.S. ___, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005). Counsel would have had no good reason to believe this Court would not have followed *Palmer* as it has done assiduously since it was handed down. The Court intends no criticism of counsels' having filed the 26(B) application. To do so was necessary for exhaustion purposes and, as counsel point out, might very well have obtained a decision on the merits in the Ohio Supreme Court. See *Landrum v. Anderson*, 185 F. Supp. 2d 868 (S.D. Ohio, 2002).

Counsel have cited no other reason, besides their unfounded fear of a *Griffin* dismissal, for their failure to file a habeas petition within one year from denial of certiorari. There may be other good reasons, but counsel have chosen not to put them on the record. From what appears of record, there does not appear to have been any good reason to wait until the last possible moment to file the Notice of Intent. At the time they delayed, counsel were obviously relying on *Bronaugh* and the Court has found that reliance interest appropriately protectible. But counsel who had followed the history of 26(B) litigation in the Sixth Circuit as closely as these counsel plainly have should have known that *White v. Schotten* and *Bronaugh* were in trouble. *Lambert v. Warden*, 2003 WL 22071466 (6th Cir. 2003), cited by Petitioner, appears on close reading[5] to be a plea for the *en banc* reconsideration of *White v. Schotten* which eventually came in *Lopez* and this Court is advised

---

[5]It of course received a close reading from the undersigned as he was the trial court judge reversed in *Lambert*.

*Lambert* fell short of en banc reconsideration by only one vote.  In short, gambling on the continued viability of *Bronaugh* should not have appeared to prudent counsel as of December 1, 2003, as a sure bet.  The far safer course would have been to file the federal petition and seek an abeyance. Counsel's reliance on *Bronaugh* does not entitle their client to equitable tolling.

### Conclusion

Respondent's Motion to Dismiss should be denied because the time for filing the Petition was tolled by the pendency of Petitioner's Ohio App. R. 26(B) application; it was not, however, equitably tolled.

November 9, 2005.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v.*

*Walters*, 638 F. 2d 947 (6ᵗʰ Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).