# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

KEITH LAMAR,
:
    Petitioner,      Case No. 1:04-cv-541

:      District Judge Thomas M. Rose
-vs-      Chief Magistrate Judge Michael R. Merz

TODD ISHEE, Warden,
:
    Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS ON MOTION TO DISMISS PETITION AS BARRED BY THE STATUTE OF LIMITATIONS

    This case is before the Court on Objections by both parties (Doc. Nos. 64, 65) to the Magistrate Judge's Report and Recommendations (Doc. No. 62) addressing Respondent's Renewed Motion to Dismiss on Statute of Limitations Grounds (Doc. No. 57). Each party has responded to the other's Objections (Doc. Nos. 66, 67). The General Order of Reference for the Dayton location of court permits the Magistrate Judge to reconsider decisions or reports and recommendations when objections are filed.

    The parties agree that this case is governed by 28 U.S.C. §2244 (d), adopted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), which enacted a one-year statute of limitations for habeas corpus cases brought under 28 U.S.C. §2254. They also agree that one-year period began to run in this case on December 2, 2002, when the United States Supreme Court denied certiorari to review Petitioner's conviction on direct appeal. The Petition was not filed until August 16, 2004. Therefore, it is barred by the statute

of limitations unless the time is (1) statutorily tolled under 28 U.S.C. §2244(d)(2) by the pendency of Mr. LaMar's Ohio App. R. 26(B) Application for Delayed Reopening, (2) equitably tolled, or (3) satisfied by Petitioner's filing a Notice of Intent to File on December 1, 2003 (Doc. No. 1).

**Statutory Tolling**

The original Report and Recommendations concluded the time was statutorily tolled by the pendency of Petitioner's Application for Delayed Reopening under Ohio App. 26(B) because at the time that Application was filed on November 19, 2003, the controlling law in this circuit was *Bronaugh v. Ohio*, 235 F.3d 280 (6th Cir. 2000). *Bronaugh* held that even an untimely application to reopen under Ohio App. 26(B) would toll the statute of limitations during its pendency. *Id*. at 286. Because *Bronaugh* remained the controlling law in this circuit until after the Petition was filed, the Magistrate Judge concluded Petitioner was entitled to rely on it (Report and Recommendations, Doc. No. 62 at 3-4).

In *Pace v. DiGuglielmo*, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005), the Supreme Court held that a postconviction petition rejected by the state courts as untimely is not "properly filed" within 28 U.S.C. §2244(d)(2) and thus does not support statutory tolling. The Warden objected to the original Report and Recommendations because it allowed Petitioner to rely on *Bronaugh*, rather than applying *Pace* (Warden's Objections, Doc. No. 64 at 2).

The Warden grounds his analysis in *United States v. Estate of Donnelly*, 397 U.S. 286, 90 S. Ct. 1033, 25 L. Ed. 2d 312 (1970). Donnelly had been assessed a federal tax liability in 1950. The assessment created a statutory lien on all of his Michigan property. Under §3672 of the 1939

Internal Revenue Code, that lien could become effective against subsequent purchasers if filed (1) as authorized in a state office, or (2) if not so authorized, with the Clerk of the United States District Court. The Treasury took the position that the relevant Michigan statute did not authorize the filing of its standard notice with the county register of deeds and it was thus permitted to file in District Court, which it did. In 1944 the Sixth Circuit had rejected this position and held that the Treasury had to conform to the Michigan filing requirements. *Youngblood v. United States*, 141 F. 2d 912 (1944). In 1960 the Carlsons bought Donnelly's land without notice of the lien; their abstracter had not checked the District Court's records. In 1961, after the Carlsons' purchase, the Supreme Court rejected the *Youngblood* interpretation and upheld the Treasury's interpretation of §3672 in *United States v. Union Central Life Ins. Co.*, 368 U.S. 291, 82 S. Ct. 349, 7 L. Ed. 2d 294 (1961). Finally, in 1966 the Treasury brought suit to foreclose on its tax liens. The Carlsons claimed reliance on *Youngblood* and were upheld by the district and circuit courts. Justice Thurgood Marshall, however, in an opinion for himself, Chief Justice Burger, and Justices Black and White, rejected that reliance and wrote:

> Acts of Congress are generally to be applied uniformly throughout the country from the date of their effectiveness onward. Generally the United States, like other parties, is entitled to adhere to what it believes to be the correct interpretation of a statute, and to reap the benefits of that adherence if it proves to be correct, except where bound to the contrary by a final judgment in a particular case. Deviant rulings by circuit courts of appeals, particularly in apparent dictum, cannot generally provide the "justified reliance" necessary to warrant withholding retroactive application of a decision construing a statute as Congress intended it. In rare cases, decisions construing federal statutes might be denied full retroactive effect, as for instance where this Court overrules its own construction of a statute, cf. Simpson v. Union Oil Co., 377 U.S. 13, 25 (1964), but this is not such a case.

397 U.S. at 294-295.

Justice Harlan in concurrence would have rested the judgment on a broader holding with respect to retroactivity.

> Yet once the decision to abandon precedent is made, I see no justification for applying principles determined to be wrong, be they constitutional or otherwise, to litigants who are in or may still come to court. The critical factor in determining when a new decisional rule should be applied to a transaction consummated prior to the decision's announcement is, in my view, the point at which the transaction has acquired such a degree of finality that the rights of the parties should be considered frozen. Just as in the criminal field the crucial moment is, for most cases, the time when a conviction has become final, see my *Desist* dissent, *supra*, so in the civil area that moment should be when the transaction is beyond challenge either because the statute of limitations has run or the rights of the parties have been fixed by litigation and have become *res judicata*. Any uncertainty engendered by this approach should, I think, be deemed part of the risks of life. . . . The essential point is that while there is flexibility in the law of remedies, this does not affect the underlying substantive principle that short of a bar of *res judicata* or statute of limitations, courts should apply the prevailing decisional rule to the cases before them.

*Id*. at 295-297.  Justices Douglas, Brennan, and Stewart in dissent would have protected the Carlsons' reliance on *Youngblood*, emphasizing that they were bona fide purchasers without actual notice of the lien.  *Id*. at 297-300.

The Warden asserts that *Donnelly* is directly in point: just as the Carlsons were not entitled to rely on circuit court law later held to be a wrong interpretation of a federal statute, so to Petitioner is not entitled to rely on *Bronaugh*, which is effectively overruled by *Pace*.

The key question of statutory interpretation, as both parties recognize, is whether Mr. LaMar's Application for Delayed Reopening was "properly filed."  In *Artuz v. Bennett*, 531 U.S. 4, 121 S. Ct. 361, 148 L. Ed.2d 213 (2000),  Justice Scalia wrote for a unanimous court:

> [A]n application is "*properly* filed" when its delivery and acceptance

> are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. ... [T]he question whether an application has been "properly filed" is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar.

121 S. Ct. at 364 (footnote omitted). In *Artuz*, the Supreme Court held that time limits on post-conviction petitions are "condition[s] to filing," such that an untimely petition would not be deemed "properly filed," but expressly reserved the question "whether the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed." 531 U.S. at 8, n. 2. In *Pace*, it answered the reserved question in the negative and held that "time limits, no matter their form, are 'filing' conditions. Because the state court rejected petitioner's PCRA petition as untimely, it was not "properly filed," and he is not entitled to statutory tolling under § 2244(d)(2)."
125 S. Ct. at 1814.

**Suggested Distinctions of this case from *Pace***

Petitioner seeks to distinguish *Pace* on the ground that Ohio App. R. 26(B) is "very different" from the post-conviction statute at issue in *Pace* because

> [T]here is no doubt that if you file beyond the one year limitation that you must meet one of the three exceptions. These exceptions are clear and not subject to a variety of interpretations. In Ohio however, the rule provides for a ninety-day time limit, but also includes the safety valve language "unless applicant shows good cause for filing at a later time."

(Petitioner's Objections, Doc. No. 65 at 4.) This argument is unpersuasive. The Supreme Court in *Pace* held that the existence of exceptions to timely filing requirements – whether they are clear cut or, on the other hand, subject to interpretation – did not matter: if the state courts found the collateral review application untimely under state law, it was not properly filed so as to come within 28 U.S.C. §2244(d)(2).

Petitioner next argues that, under the Warden's interpretation, a delayed 26(B) application would never toll the statute of limitations, which would be "inherently unfair" because the 90-day time limit is so short. *Id*. at 5. This argument misunderstands Ohio App. R. 26(B). If a delayed application is filed and the Ohio court finds good cause for the delay, there is no question that the filing is proper under §2244(d)(2) and therefore will toll the statute, particularly now that both the Ohio Supreme Court and the Sixth Circuit have recognized that 26(B) applications are for collateral review of a judgment and not part of direct appeal. *Morgan v. Eads,* 104 Ohio St. 3d 142, 818 N.E. 2d 1157 (2004); *Lopez v. Wilson*, 426 F. 3d 339 (6th Cir. 2005)(*en banc*).

Finally, Petitioner argues that at the time he filed his 26(B) application, the Ohio Supreme Court was not applying the timeliness bar of App. R. 26(B) in capital cases, but was deciding them on the merits (Petitioner's Objections, Doc. No. 65 at 5). He then argues that if the timeliness bar was not "firmly established and regularly followed," its application in a particular case does not prevent the collateral review application from being "properly filed," citing *Siebert v. Campbell*, 334 F. 3d 1018 (11th Cir. 2003).

The "firmly established and regularly followed" requirement limits those state grounds of decision which are adequate and independent and therefore prevent a federal court from reaching the merits of federal constitutional claims. In the habeas arena, that usually means that the state

courts have decided a federal claim is procedurally defaulted; if the state procedural rule is adequate and independent, then the federal court also does not reach the federal claim. *See generally Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). In capital cases, this Court decided that, at least in 2002, the timeliness rule of 26(B) was not an adequate and independent state ground because it was not being enforced by the Ohio Supreme Court. *Landrum v. Anderson*, 185 F. Supp. 2d 868 (S.D. Ohio, 2002).

However, there is no warrant in the language of §2244(d)(2) or *Pace* for importing the firmly established and regularly followed requirement into the interpretation of "properly filed" for purposes of tolling the statute of limitations. To put it another way, if the timeliness rule is not now firmly established and regularly followed by the Ohio Supreme Court,[1] the fact that Petitioner was five and one-half years late in filing his 26(B) Application would not bar this Court from reviewing his ineffective assistance of appellate counsel claim or claims, if they were part of a timely-filed Petition. *Landrum, supra.* In any event, *Siebert* was decided two years prior to *Pace,* is inconsistent with it, and does not cite any other circuit which has applied the firmly established and regularly followed test in interpreting "properly filed."

In sum, Petitioner has failed to suggest any viable distinctions of this case from *Pace*.

**Does Pace Apply "Retroactively"?**

The Warden insists, based on *Donnelly, supra,* that the Supreme Court's interpretation of "properly filed" in *Pace* must be applied to this case. In response, Petitioner offers no general

---

[1] This question is not now before the Court and the Court implies no answer to it.

analysis of retroactive application of case law, but instead insists he was entitled to rely on *Bronaugh*.

The teaching of *Donnelly* is that reliance on circuit case law is unavailing if the Supreme Court reverses that case law, at least until a party is entitled to *res judicata* effect for its reliance. Mr. LaMar's situation is analytically no different from the Carlsons[2] who relied on well-established Sixth Circuit law when they or their abstracter did not check the district court clerk's records. Nonetheless, their property was sold to satisfy their seller's tax liability because the Supreme Court changed the law before they got a judgment.

*Donnelly* is in line with the more recent retroactivity jurisprudence of the Supreme Court. The Supreme Court has held that when it applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate the court's announcement of the rule. *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 113 S. Ct. 2510 (1993). When the Court does not reserve the question whether its holding should be applied to the parties before it, the opinion is properly understood to have followed the normal rule of retroactive application. *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 111 S. Ct. 2439, 115 L. Ed. 2d 481 (1991). Of course, the Supreme Court applied the *Pace* rule to the parties in that case and it must therefore be applied to all pending cases, including this one, even though the events of Mr. LaMar's reliance on *Bronaugh* and subsequent filing in this Court predate the *Pace* decision.

The parties have spent some time arguing whether *Bronaugh* was good or bad law. In the

---

[2]Of course, Petitioner has far more at stake than a property interest,

-8-

original Report and Recommendations, I wrote

> [*Bronaugh's*] authority does not depend on the quality of its logic, but on the position in the judicial hierarchy of the court that decided it. "Unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1982).

(Doc. No. 62 at 2-3.) However, I did not follow my own logic to its proper conclusion. I was obliged to follow *Bronaugh* as long as it was the law, regardless of how well it was reasoned.[3] But when *Pace* became the law, I was no longer entitled to apply *Bronaugh* to pending cases.

Because *Pace* must be applied to this case, LaMar is not entitled to statutory tolling under §2244(d)(2).

**Equitable Tolling**

Petitioner asserts in the alternative that he is entitled to equitable tolling of the statute. In *Pace, supra,* the Supreme Court assumed that equitable tolling may be available under §2244(d), although it concluded that petitioner there was not entitled to it. The controlling law in this circuit is that habeas petitioners may invoke equitable tolling of the habeas corpus statute of limitations. *Dunlap v. United States*, 250 F. 3d 1001 (6th Cir. 2001). Applying *Dunlap*, the Magistrate Judge concluded in the original Report and Recommendations that Petitioner is not entitled to equitable tolling in this case. Petitioner did not claim to be ignorant of the filing deadline and the Magistrate Judge found no prejudice to the Warden in the delay. However, the Magistrate Judge did find that

---

[3]As Chief Judge Boggs reminded me forcefully but ironically in *Lambert v. Warden*, 2003 WL 22071466 (6th Cir. 2003).

Petitioner had not been diligent in pursuing his rights. In particular he offered no explanation of why he delayed five and one-half years in filing his 26(B) Application, why he waited until the day before the statute ran to file his Notice of Intent, and why he did not file a mixed petition (including the ineffective assistance of appellate counsel claim being exhausted in the 26(B) proceeding) and then ask this Court to follow the well-established stay and abey procedures then approved by the Sixth Circuit in *Palmer v. Carlton*, 276 F. 3d 377 (6th Cir. 2002), and since approved by the Supreme Court in *Rhines v. Weber*, 541 U.S. ___, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005).

In his Objections, Petitioner now says he should be given an evidentiary hearing on his reasons for delay. He never requested such a hearing on the Motion to Dismiss before the Report and Recommendations were filed, nor does he now suggest what facts he would put of record in such a hearing. He notes that he intends to depose his post-conviction counsel about why they didn't file a 26(B) application, but, even assuming perfectly cogent answers by those attorneys, that would not fully explain the delay.

Angela Miller and Kathleen McGarry became associated with Mr. LaMar's case sometime before November 19, 2003, because on that date they filed the 26(B) Application on his behalf and two weeks later moved on his behalf that they be appointed his habeas counsel (Doc. No. 2). They have offered no explanation of their delay from November 19, 2003, until August, 2004, except to say they were relying on *Bronaugh*. That delay requires at least as much explanation under *Dunlap* as the failure to post-conviction counsel to file.

Since a statute of limitations defense is a "threshold" matter, it would ordinarily make sense to conduct any evidentiary hearing on that issue separately from an evidentiary hearing on the merits. However, in this case a ruling on the statute of limitations defense has been delayed until

very near the discovery cut-off which will occur on December 31, 2005.  Petitioner's motion for evidentiary hearing will then be due January 30, 2006.  Rather than separate the issue of equitable tolling, Petitioner shall include that issue in his motion for evidentiary hearing generally.

Pending evidentiary hearing, the Magistrate Judge's recommendation to deny equitable tolling is withdrawn.

### Notice of Intent to File

Petitioner filed his Notice of Intent to File for habeas corpus on December 1, 2003, one day before the statute of limitations expired unless it is tolled.  In arguing the Motion to Dismiss, Petitioner had stated that " arguably" filing the Notice of Intent satisfies the statute, relying on a suggestion offered by Judge Kennedy in dissent in *Williams v. Coyle*, 167 F. 3d 1036, 1041 (6th Cir. 1999). In the original Report and Recommendations, the Magistrate Judges "decline[d] to adopt that suggestion." (R&R, Doc. No. 62, n.2.)  Given the vigor with which the Motion to Dismiss has been litigated, prudence dictates expanding on the reasons.

While filing a Notice of Intent gives this Court sufficient jurisdiction to appoint counsel (*McFarland v. Scott,* 512 U.S. 849 (1994)) to draft a petition, it performs few if any other functions of an actual petition.  It does not give the warden notice of the claims against which she must defend. It does little to set the case on a schedule for resolution.  It does not fix the parameters within which later amendments must be made.  *See Mayle v. Felix*, ___ U.S. ___, 125 S. Ct. 2262 (2005).  It certainly does not comport with any natural reading of the language of 28 U.S.C. §2241, *et seq*. Since a federal habeas petition itself is not an "application for state collateral review" and therefore

-11-

does not toll the statute under §2244, *Duncan v. Walker,* 533 U.S. 167 (2001), it would certainly be anomalous to hold that filing a notice of intent satisfied the statute.

## Conclusion

In accordance with the foregoing opinion:

1. the recommendation in the original Report to grant statutory tolling on the basis of *Bronaugh* is withdrawn and the Magistrate Judge now recommends concluding that statutory tolling is precluded by *Pace*;

2. the recommendation in the original Report to deny equitable tolling is withdrawn pending an evidentiary hearing if shown to be warranted; and

3. it is respectfully recommended the Court conclude the statute is not satisfied by filing the Notice of Intent.

December 12, 2005.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond

to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).